UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL BOCCANFUSO,

    Plaintiff,

v.                                                                Case No. 8:21-cv-2272-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits (DIB).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to consider the medical opinion from Angela Walcher, M.D., and by relying upon a response from the vocational expert (VE) to an incomplete hypothetical posed by the ALJ. As the ALJ's decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

    I.    *Background*

Plaintiff, who was born in 1976, claimed disability beginning March 31, 2018 (Tr. 182). He was 41 years old on the alleged onset date. Plaintiff completed two years of college, and his past relevant work experience included work as a laboratory

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

technician (Tr. 46, 327). Plaintiff alleged disability due to post-traumatic stress disorder (PTSD), migraine headaches, and sleep apnea (Tr. 326).

Given his alleged disability, Plaintiff filed an application for a period of disability and DIB (Tr. 182-83). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 58-93, 98-104, 108-20). Plaintiff then requested an administrative hearing (Tr. 121-22). Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 29-55). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7-28).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through September 30, 2023, and had not engaged in substantial gainful activity since March 31, 2018, the alleged onset date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: thoracic scoliosis, meralgia paresthetica, migraine headaches, obstructive sleep apnea, exercise-induced asthma, allergic rhinitis, perforated right eardrum, obesity, and PTSD (Tr. 13). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work with the following exceptions: could stand and/or walk six hours total in an eight-hour workday; could sit six hours total in an eight-hour workday;

could climb, balance, stoop, kneel, crouch, and crawl occasionally; could have no concentrated exposure to extreme cold, extreme heat, wetness, humidity, or vibration; could have no exposure to loud or very loud noise (*i.e.*, able to tolerate moderate noise levels or below); could have no concentrated exposure to fumes, odors, dusts, gases, or other pulmonary irritants; and could have occasional contact with supervisors, coworkers, and the members of the public (Tr. 16). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 17).

Considering Plaintiff's noted impairments and the assessment of the VE, however, the ALJ determined that Plaintiff could not perform his past relevant work (Tr. 21). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a final inspector, a price marker, and a small products assembler (Tr. 22-23, 47-53). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 23). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 180-81). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

## II. *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and

work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial

evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

    III.    *Discussion*

Plaintiff argues that the ALJ failed to consider the medical opinion of Dr. Walcher regarding Plaintiff's migraine headaches that result in prostrating attacks. More specifically, Plaintiff contends that the ALJ "should have discussed the opinion of Dr. Walcher and why or why not the opinion was accepted" as the other medical opinions discussed by the ALJ did not address whether Plaintiff's migraine headaches would result in prostrating attacks (Doc. 18, at 8). Given such failure, Plaintiff asserts that the ALJ relied upon the VE's response to an incomplete hypothetical that did not include limitations for migraine headaches resulting in prostrating attacks.

    A.    *Dr. Walcher's Opinion*

Though the two issues are intertwined, I will turn first to the assessment of Dr. Walcher's opinion. In assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. § 404.1520c(c)(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the

more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2).

In the decision, the ALJ addressed Plaintiff's migraine headaches and Dr. Walcher's opinion as to the prostrating attacks resulting from Plaintiff's migraine headaches. Namely, the ALJ indicated that Plaintiff's migraine headaches constituted a severe impairment (Tr. 13) and then discussed the evidence of record related to Plaintiff's migraine headaches, stating:

> First, the primary impairment alleged by the claimant and representative at the hearing was migraines. The medical records show a long history of consistent complaints and treatment associated with migraines. Accordingly, I included several environmental limitations in the light RFC to accommodate the claimant's migraines. However, the evidence as a whole does not support the disabling severity of migraines alleged by the claimant. The migraines are not intractable and without status migrainosus. Although the claimant usually reported two migraines per week, he reported that only one migraine per month is of prostrating severity, and it lasts less than one day. During a severe headache, he only needs to lie down in a quiet, dark room for approximately two hours with no other limitations. He reported that medication helps. Furthermore, the record states that he has no migraines productive of severe economic inadaptability. Moreover, the claimant is able to attend college full-time despite his migraines. He reported that he passes most classes. He has not been employed because he is "just trying to do the school thing." Therefore, while some limitations are warranted in the RFC to prevent exacerbations of migraines, the evidence does not support the disabling severity of migraines alleged by the claimant. The limitation to moderate noise also accommodates the claimant's perforated right eardrum, although the medical records include no objective evidence of hearing loss.

(Tr. 18) (internal citations omitted).[2]  After summarizing the evidence pertaining to Plaintiff's headaches and other physical and mental impairments, the ALJ discussed the medical opinions of record, including the opinion of Dr. Walcher.

As the ALJ mentioned, Dr. Walcher conducted an assessment of Plaintiff's headaches in February 2018 in conjunction with a VA compensation and pension examination request (Tr. 18, 20, 503-06).  Based on Plaintiff's reports, Dr. Walcher indicated that Plaintiff's headaches included symptoms of pulsating or throbbing pain on both sides of the head, pain exacerbated by physical activity, nausea, sensitivity to light, sensitivity to sound, and changes in vision, with the typical head pain lasting less than one day and with medication treatment consisting of sumatriptan and over-the-counter medication, taken as needed (Tr. 505-06).  Dr. Walcher noted that Plaintiff experienced prostrating attacks once per month but also noted that Plaintiff did not have very prostrating and prolonged attacks of migraines productive of severe economic inadaptability (Tr. 506).  Following the assessment, Dr. Walcher opined

---

[2] The record also reflects that Plaintiff received a Department of Veterans Affairs (VA) service-related disability rating of 30 percent attributable to migraines (Tr. 493).  In the decision, the ALJ did not address the VA service-related disability rating.  Under the new regulations, however, the ALJ did not need to provide any analysis about a VA disability or benefits decision but needed to consider the supporting evidence underlying the VA's decision to the extent that such evidence was in the record.  *See* 20 C.F.R. § 404.1504.  The regulations indicate that, because a decision by any other governmental agency or a nongovernmental entity about whether a claimant is disabled, blind, employable, or entitled to benefits is based on its rules, such decision does not bind the SSA and is not the SSA's decision about whether a claimant is disabled or blind under the SSA's rules.  20 C.F.R. § 404.1504.  Accordingly, for any claims filed after March 27, 2017, including Plaintiff's claim, the SSA need not provide any analysis in its determination or decision about a decision made by any other governmental agency, specifically including the VA, regarding whether a claimant is disabled, blind, employable, or entitled to any benefits.  20 C.F.R. § 404.1504.

that Plaintiff's headache condition would impact Plaintiff's ability to work because, for two hours during a severe headache, Plaintiff would need to remain in a quiet, dark room where he could lie down (Tr. 506). Dr. Walcher noted no other limitations related to Plaintiff's headaches (Tr. 506).

In considering Dr. Walcher's opinion that Plaintiff would need to remain in a quiet, dark room where he could lie down for approximately two hours during a severe headache, the ALJ found the opinion unpersuasive (Tr. 20). The ALJ stated that Dr. Walcher provided no objective medical support for her opinion, and the opinion was inconsistent with the evidence of record, including Plaintiff's statements that medication helped his headaches and that he attended college on a full-time basis (Tr. 20). To the extent that Plaintiff contends that the ALJ simply failed to discuss the opinion of Dr. Walcher or to discuss why Dr. Walcher's opinion was not accepted, Plaintiff's argument fails.

To the extent that Plaintiff argues that the ALJ improperly considered Dr. Walcher's opinion regarding Plaintiff's prostrating migraine headaches requiring time off work to lie down in a quiet, dark room and, in turn, failed to include such limitation in the hypothetical to the VE, such argument warrants remand. (*see* Tr. 18, 20, 496, 546-47, 643). To start, the ALJ dismissed Dr. Walcher's opinion in a cursory fashion, stating only that Dr. Walcher provided no objective medical support for her opinion and that the opinion was inconsistent with the record as a whole, noting only that Plaintiff reported that medications helped his headaches and that he attended college full-time (Tr. 20). Review of Dr. Walcher's assessment indicates that she did not rely

9

solely upon a single examination of Plaintiff, but rather, in addition to her examination of Plaintiff, she reviewed VA medical records from March 2004 through January 2018 (Tr. 503-07). Those records showed that, although Plaintiff received some relief with medication initially, the efficacy of the medication decreased as early as July 2016 and the frequency and severity of his migraines increased (Tr. 503-07). In fact, as of January 2018, Plaintiff reported suffering migraines about twice per week, taking sumatriptan, experiencing a lack of effectiveness of preventative medications taken previously, and needing to go into a dark, quiet room to decrease the duration of the migraines (Tr. 504).

    The other evidence of record similarly supported the statements regarding the severity of Plaintiff's migraines and the need for Plaintiff to go into a dark, quiet room to relieve his symptoms. For example, in December 2018, Plaintiff continued to take sumatriptan two to three times per month to treat his migraines (Tr. 613). By June 2019, Plaintiff reported experiencing migraines three to four times per week while continuing to take sumatriptan, after which both propranolol and naprosyn were added to his medication regimen in an effort to relieve his migraines (Tr. 592). Later, in February 2020, Plaintiff reiterated his severe symptoms, including the increased frequency of his migraines to an average of two per week, the prostrating attacks at least once every month, and the need to go into a different room and turn off the lights at the onset of a migraine (Tr. 260-62).

    Further, the ALJ's other stated reason for discounting Dr. Walcher's opinion, *i.e.*, Plaintiff's ability to attend college full-time, provides little, if any, support for his

finding that Dr. Walcher's opinion was unpersuasive. An ability to attend college full-time does not necessarily equate to the ability to work full-time. Social Security Ruling (SSR) 96-8p defines work on a "regular and continuing basis" as working 8 hours a day, for 5 days per work, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). Often, a full-time college schedule consists of a total of 12 to 16 hours of course work or classes per week; can be scheduled to accommodate a student's preferences, such as morning classes or night classes; and can often include online courses that a student can review at his convenience. Indeed, though Plaintiff stated that he attended college full-time at Hillsborough Community College, Plaintiff reported that he performed better with online classes than in-person classes (Tr. 496, 546, 643). Plaintiff's ability to attend college full-time thus does not render Plaintiff's need to lie down in a quiet, dark room at the onset of a migraine invalid.

The ALJ's stated reasons for finding Dr. Walcher's opinion unpersuasive regarding the severity of Plaintiff's migraines and the need to lie down in a dark, quiet room do not find support in the record. As a result, substantial evidence does not support the ALJ's assessment of Dr. Walcher's opinion. Upon remand, therefore, the ALJ should reconsider Dr. Walcher's opinion along with the other evidence of record related to Plaintiff's migraines.

### B.   Hypothetical to VE

Turning to Plaintiff's second contention of error, Plaintiff argues that the ALJ relied upon the VE's testimony in response to an incomplete hypothetical that failed to account for Plaintiff's migraine headaches and the need to lie down in a quiet, dark

room for a period of two hours during a severe headache. At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004), *superseded by regulation on other grounds*, 20 C.F.R. § 404.1520c, *as stated in Jones v. Soc. Sec. Admin.*, No. 22-10507, 2022 WL 3448090, at *1 (11th Cir. Aug. 17, 2022); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); 20 C.F.R. § 404.1520(a)(4)(v). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted). There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy; namely, by applying the Medical Vocational Guidelines and by using a VE. *Phillips*, 357 F.3d at 1239-40. Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the ALJ must consult a VE. *Id.* at 1242.

If the ALJ utilizes the testimony of a VE, the ALJ must pose an accurate hypothetical to the VE that accounts for all of the claimant's impairments. *Ingram*, 496 F.3d at 1270 (citation omitted). When the ALJ properly rejects purported impairments or limitations, the ALJ need not include those findings in the hypothetical posed to the VE. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"). For a VE's testimony to constitute substantial evidence, however, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson*, 284 F.3d at 1227.

Given the findings set forth above, the ALJ should, upon remand, pose a hypothetical to the VE incorporating any limitations supported by the record, including the need to go to a quiet, dark room for a period at least once per month. As the VE's testimony from the administrative hearing indicates, the significance of such limitation could be dispositive. Indeed, during the administrative hearing, both the ALJ and Plaintiff's attorney addressed issues pertaining to off-task allotments and absenteeism and their effects on the ability to perform work existing in significant numbers in the national economy.

First, the ALJ asked whether a person remaining off task 15 percent of the day due to migraine headaches, or any other reason relating to their impairments, would eliminate all work in the national economy, to which the VE testified that it would (Tr. 49). The ALJ also questioned the VE as to absenteeism, asking whether all work would be eliminated if a person was absent at least two days per month on average on

13

an ongoing basis due to their impairments (Tr. 49). Based on published benefit data and the VE's professional experience, the VE opined that all work would be eliminated under those circumstances (Tr. 49).

After the ALJ finished questioning the VE, Plaintiff's attorney posed some follow-up questions to the VE relating to potential limitations stemming from Plaintiff's migraine headaches (Tr. 50-52). Initially, Plaintiff's attorney posed a hypothetical to the VE, asking the VE to assume that an individual experiences migraine headaches anywhere from three to four times per week or two to three times per week and, while the headaches could last anywhere from four to 12 hours, the individual would only need to leave the workstation for approximately one hour each time the individual experienced the migraine until the severest symptoms subsided (Tr. 50). Plaintiff's attorney elaborated that leaving the workstation for those periods of time would lead to unscheduled breaks from two times per week to four times per week for about an hour at a time, while the rest of the time the individual could perform work previously described by the ALJ in a hypothetical. He then asked whether such individual could perform either Plaintiff's past work or any other work, and, in response, the VE stated that such individual could not perform work on a full-time basis (Tr. 50). Accordingly, on remand, the ALJ should pose a comprehensive hypothetical to the VE to ensure that the VE's testimony provides substantial evidence in support of the ALJ's decision.

*IV.   Conclusion*

For the foregoing reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence. Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 7th day of November, 2022.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:   Counsel of Record